No. 14,569.

BURNHAM *v.* THE PEOPLE.
(93 P. [2d] 899)

Decided June 12, 1939. Rehearing denied September 11, 1939.

Mr. GRANBY HILLYER, Mr. WILLIAM E. ANDERSON, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. HENRY E. LUTZ, Assistant, for the people.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

BURNHAM, to whom reference will hereinafter be made as defendant, was convicted of receiving stolen property, and sentenced to a term of not less than two years nor more than two and one-half years in the penitentiary. He is here seeking reversal on an application for supersedeas and requests that the matter be decided on the application.

The facts which led to defendant's conviction are substantially as follows: One Liff owned a women's apparel shop on Fifteenth street in the city of Denver, known as "The Vanity Shop." On the morning of August 4th, 1937, when he entered the store, he discovered that a quantity of his merchandise was missing, and that the transom over the front door was open. He immediately notified the Denver police who began an investigation. A

short time later two men, Arel Williams and Robert Boyd, were picked up in Colorado Springs and a watch (Exhibit A) and several articles of women's apparel bearing the Vanity Shop label (Exhibit B) were found in their possession. These two men were returned to Denver for questioning by the city police, and from information obtained, the officers concluded that most of the stolen goods had been disposed of in Pueblo. The police of the latter city were requested to make a search of the second-hand stores there, one of which was owned and operated by the defendant. When first approached, defendant flatly denied the purchase of any merchandise such as that described by the police, and the Pueblo authorities having been unable to locate it elsewhere, so advised the Denver officials. The Pueblo police were assured, however, that the stolen goods had been bought by defendant, and acting on such assurance they returned to his place of business a second time, and upon further questioning and search, found all of the missing articles of clothing enumerated in the information, the total value of which was about fifty-five dollars. Defendant admitted purchasing the same for six dollars.

Defendant's explanation was that he had bought the goods from a salesman named Charles Everett whose home was in "Aberdeen, Dakota"; that this salesman had told him business was not so good; that he could make more money up around home, and that he was anxious to get back there. Defendant also testified that he bought this merchandise August 3rd, seeking thereby to prove that the goods could not have been stolen from the Denver store on the morning of August 4th.

Concerning second-hand stores a Pueblo city ordinance provides that each dealer must keep a complete daily record of all purchases, giving the date, description of the merchandise, name, residence and nationality of the seller and the time received. Defendant's excuse for not having filled out this record sheet was that he was busy waiting on a customer, and that before he could talk

to the alleged salesman about it he had left the store; that he went out on the street to recall the man and saw him driving away in a car bearing a California license.

Defendant's attempt to reconcile this purchase from a supposed salesman with the fact that the Vanity Shop tickets were still on the merchandise when the police found it in his possession is not convincing, and it is not strange that the jury did not believe his story. His witnesses were all relatives or friends and it is impossible to harmonize the many conflicting statements appearing in their testimony.

No good purpose would be served by a further analysis of the evidence. The two essential elements of the crime charged were established beyond any question; that is, that the goods were stolen, and that all of them, except exhibits A and B, a watch and robe and dress, were found in defendant's possession. Direct proof of his knowledge that the goods had been larcenously obtained was not necessary. The facts established were clearly sufficient to justify the jury's finding that he knew the goods were stolen. The circumstances considered, they are clearly inconsistent with any reasonable presumption of innocence.

Counsel for defendant summarize their assignments of error as follows: 1. Exhibits A and B were not admissible as evidence. 2. The state failed to prove that Williams and Boyd stole the merchandise. 3. Insufficiency of evidence to establish guilty knowledge. 4. Prejudice of one of the jurors.

They practically concede the weakness of their position when they say, "Possibly no one of these several questions if relied upon alone might be found of sufficient weight and importance to justify an appellate court in a reversal of the judgment complained of. * * *."

1. There was no error in the admission of Exhibits A and B, in evidence, although they were not a part of the merchandise found in defendant's possession. That they were among the articles obtained in the burglary

of the Vanity Shop was established beyond question. That they were admissible for the purpose of establishing the theft is clear, and the court very carefully explained and limited this purpose in its instruction. "One of the necessary elements of the crime of receiving stolen property is that the property has, in fact, been stolen by someone other than the one charged with receiving it." *People v. Gaskill*, 322 Ill. 259, 264, 153 N. E. 393.

By their citation of authorities, counsel for defendant seem to confuse this proposition with the general rule that evidence of other crimes is not admissible against a defendant. Their quotation from "Cyc" indicates the exception here involved; namely, that evidence of thefts of other goods from the same owner by the same thief is admissible where it is connected with the same transaction. That is the present case, where the exhibits were part of the merchandise procured in the same theft which necessarily had to be established as a part of the state's case. 34 Cyc. 526. That the exception is fully justified is apparent in view of the difficulty of conviction in cases of this kind where, if permissible, one could, by the simple process of dividing the loot with a half dozen receivers, exclude all evidence of the theft.

2. Defendant complains that the state failed to prove that Williams and Boyd stole the goods, as alleged in the information. The contention is without merit. These men were in the court room, their names had been endorsed on the information as people's witnesses, and they could have been called. They were not called evidently because of the fact that the theft was otherwise clearly established, and it became unnecessary to elicit the same information from the thieves.

3. Insufficiency of the proof of guilty knowledge. We already have commented on this feature of the case and simply repeat that defendant's attempt to explain the presence of Vanity Shop markers and tags on the merchandise in his possession made no impression on the jury. This coupled with his failure to comply with the city

ordinance requiring full information concerning the purchase he admits making was sufficient to justify the jury's conclusion of guilty knowledge. "Direct proof of knowledge of theft is seldom obtainable, and there were sufficient facts and circumstances, in the instant case, together with the defendant's admissions, from which the jury could find that defendant had knowledge of the theft at the time he received the car [goods]." *Goodfellow v. People,* 75 Colo. 243, 245, 224 Pac. 1051. The so-called "inference upon inference" rule has no application to the facts in this case. Only one robbery was involved, and the suggestion that there may have been two has no support in the record.

■ 4. As to the affidavits filed to impeach the verdict, there is no showing that any exception should here be made to the general rule laid down in *Boyles v. People,* 90 Colo. 32, 6 P. (2d) 7. The only affidavit worthy of mention is that concerning juror Wodishek, who, it is alleged, was at one time a partner of one Novak with whom the defendant several years previous had had an argument over some property, and that because defendant was near sighted he could not see Wodishek in the jury box. There is nothing in the affidavit which charges or intimates misconduct or prejudice on the part of the juror and he stated positively on the voir dire examination that he did not know the defendant and was not biased or prejudiced.

We have carefully read the record in this matter and are satisfied that the defendant had a fair and impartial trial.

Judgment affirmed.

MR. JUSTICE FRANCIS E. BOUCK not participating.